**LYNCH CARPENTER, LLP**
Todd D. Carpenter (CA Bar No. 234464)
todd@lcllp.com
(Eddie) Jae K. Kim (CA Bar No. 236805)
ekim@lcllp.com
Tiffine E. Malamphy (CA Bar No. 312239)
tiffine@lcllp.com
9171 Towne Centre Dr, Ste 180
San Diego, CA 92122
Telephone: (619) 762-1910
Facsimile: (858) 313-1850

*Attorneys for Plaintiff
and Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKAELA TRAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No.: '25CV1232 AJB SBC<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Mikaela Tran ("Plaintiff") brings this action, on behalf of herself and all others similarly situated, against Defendant Bank of America, N.A. ("BofA" or "Defendant"), and states:

## I.   INTRODUCTION

1. Plaintiff brings this action on behalf of California residents who received state-administered unemployment and related public benefits through prepaid debit card accounts established and operated by BofA. The case concerns BofA's systematic retention of investment income derived from those public funds, which were entrusted to BofA strictly for distribution—not exploitation.

2. These benefit payments, issued by the California Employment Development Department ("EDD"), were electronically deposited into individualized debit card accounts. Although BofA administered and controlled these accounts, California law

1
CLASS ACTION COMPLAINT

recognizes that such funds remain the exclusive property of the recipients. Because they were deposited for a specific and limited purpose, the funds qualify as special deposits, and any earnings derived from them are the legal property of the depositor.

3. Despite this, BofA leveraged these custodial accounts to generate significant investment returns—known as "float income"—during the time it held recipients' funds prior to withdrawal. These returns were retained entirely by BofA, without disclosure, compensation, or legal entitlement.

4. The rights of recipients are governed not only by their contracts with BofA, but also by settled California and federal law. Under binding precedent, interest or income earned on funds held in custodial or fiduciary capacity belongs to the beneficial owner of the funds, not the custodian.

5. BofA's debit cardholder agreements further reinforce that recipients owned the deposited funds and that California law governed the accounts. Nevertheless, BofA appropriated the resulting investment gains—an act that amounts to conversion of property, breach of fiduciary duty, unfair business conduct, and unjust enrichment.

6. California courts have recognized fiduciary duties arising from special deposit relationships, where a financial institution holds money for a specific purpose without acquiring beneficial title to the funds. Such a relationship imposes a duty of loyalty, prohibits self-dealing, and requires that all benefits derived from use of the funds be returned to the depositor.

7. BofA violated this duty by treating public benefit funds as a source of private profit—while recipients, many of whom were financially vulnerable, were never compensated for the use of their property.

8. This lawsuit seeks recovery of the improperly retained investment earnings, as well as injunctive and equitable relief to prevent future misappropriation of government benefit funds.

9. Even if BofA's conduct is not found to be unlawful under tort or statutory claims, equity demands restitution of ill-gotten gains, which were unjustly retained by

BofA in violation of the principles set forth in California case law and the Restatement of Restitution.

## II. JURISDICTION AND VENUE

10. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and the proposed Class includes more than 100 individuals, at least one of whom resides in a different state than the Defendant.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because key transactions and omissions at issue occurred here, there is personal jurisdiction of Defendant in this District, and Plaintiff resides within this District and received the benefit payments giving rise to these claims in this jurisdiction.

12. Plaintiff is a citizen and resident of Oceanside, California.

13. Personal jurisdiction over Defendant is proper because the bank conducts continuous and systematic business activities in California, and the claims in this action arise from its conduct within the state.

## III. PARTIES

14. Plaintiff is an individual domiciled in California who, during the relevant time period, received public benefits administered through EDD and accessed those funds using a prepaid debit card issued and managed by Defendant.

15. Defendant is a national banking association with its main corporate offices located in Charlotte, North Carolina. It transacts substantial business in California, including its prior role as the sole financial agent for the state's public benefits disbursement program.

## IV. GENERAL ALLEGATIONS

16. At all times relevant, the State of California issued unemployment insurance, disability insurance, and family leave payments through the EDD, which partnered with BofA to deliver these benefits electronically.

17. As part of that arrangement, BofA established and maintained individual prepaid card accounts, into which EDD directly deposited funds intended solely for the benefit of approved recipients.

18. Recipients were permitted to choose between direct deposit into a personal bank account or enrollment in the state-sponsored debit card program. For hundreds of thousands of recipients, the latter was the only viable option given limited access to conventional banking.

19. These EDD debit cards allowed recipients to use their benefits for everyday expenses, through point-of-sale purchases, ATM withdrawals, or online transactions—without requiring credit checks or minimum balances.

20. Each month, qualifying Californians automatically received benefit disbursements to their BofA-managed debit card accounts, enabling consistent and immediate access to state funds.

21. More than 1,000,000 California residents were actively enrolled in the program. At its pandemic-era peak, the EDD processed millions of unemployment applications in a matter of months, resulting in a massive influx of public funds into accounts managed by BofA.

22. For many Californians, these state benefits represented their sole source of financial support. A significant portion of beneficiaries lacked any other bank relationship beyond their prepaid card accounts.

23. Importantly, the debit card accounts were created and controlled by BofA, not by the State of California. BofA operated as the financial intermediary, with full control over the timing, method, and structure of account management and fund access.

24. To activate and use the cards, recipients were required to accept BofA's standard form Terms and Conditions, which governed the contractual relationship and outlined the cardholder's rights and BofA's obligations.

25. That agreement explicitly stated that funds in each card account belonged to the individual recipient, not to BofA.

26. The agreement also noted that EDD cardholders were not traditional depositors and lacked the rights and privileges associated with BofA's general banking customers. Nevertheless, the funds remained personal property from the moment of deposit.

27. The governing law clause further established that California law applied to all questions of interpretation and enforcement.

28. Federal law does not explicitly govern the treatment of earnings derived from prepaid card deposits in this context, leaving the matter squarely under state jurisdiction. California's rules on custodial deposits, fiduciary duties, and unjust enrichment therefore control.

### V.   PLAINTIFF'S EXPERIENCE

29. Plaintiff enrolled in the EDD's public benefit program in or around August 2023 and, pursuant to that enrollment, received a prepaid debit card issued by BofA, which was linked to a designated deposit account exclusively administered by the bank.

30. Over a span of approximately six (6) months, from approximately September 2023 to February 2024, Plaintiff's benefit payments were electronically transferred into her BofA-issued EDD account.

31. These deposits were typically $250 to $450 per month and represented either the entirety or the majority of Plaintiff's income during this period.

32. At all relevant times, the funds deposited into this account were held by BofA solely for the benefit of Plaintiff and subject to her ownership rights. Under California law, such deposits qualified as special-purpose custodial holdings, and the bank had no lawful claim to any interest or profits derived from them.

33. Nevertheless, BofA made use of the funds while they remained under its control—whether for overnight float, investment purposes, or pooled asset management—to generate undisclosed financial returns.

34. At no point did BofA disclose to Plaintiff that it was retaining the investment proceeds arising from her deposits. Nor did it offer her any compensation for the use of her funds, despite having no ownership interest in them.

35. As a direct consequence of this conduct, Plaintiff was deprived of earnings that, by operation of law and equity, rightfully belonged to her. She seeks to recover those gains, along with appropriate injunctive and declaratory relief.

## VI.   CLASS ALLEGATIONS

36. Plaintiff seeks to represent a class of similarly affected individuals under Federal Rule of Civil Procedure 23.

37. The proposed Class is defined as: All California residents who, during the relevant time period, held prepaid debit card accounts issued by Defendant for the receipt of EDD-administered benefits.

38. Excluded from the Class are Defendant; its parent companies, affiliates, and officers; any governmental agencies; individuals who opt out; and members of the judiciary assigned to this case and their immediate families.

39. The Class comprises hundreds of thousands, if not millions of individuals making joinder impracticable. BofA's internal account records can readily identify Class members. Plaintiff's counsel have substantial experience prosecuting class action lawsuits against federally chartered financial institutions, including BofA and have readily acquired such account level data to support class certification, including most recently in *Polvay v. FCTI, Inc.*, Case No. 22-cv-4315 (JSR), (S.D.N.Y.).

40. Plaintiff's claims arise from the same course of conduct that injured all Class members and are typical in both nature and legal theory.

41. There are numerous questions of law and fact common to the Class, including but not limited to:

    a. whether California law governs the nature and ownership of EDD benefit deposits;

     b.     whether such funds qualify as "special deposits" under California precedent;

     c.     whether investment gains arising from those deposits belong to recipients;

     d.     whether BofA owed fiduciary duties to recipients as custodians of their funds;

     e.     whether BofA's retention of those gains constituted conversion or unjust enrichment;

     f.     whether such conduct violates California's Unfair Competition Law; and

     g.     whether restitution, disgorgement, or injunctive relief is appropriate.

42. Plaintiff is committed to prosecuting this case on behalf of the Class and has retained counsel with deep experience in financial and consumer protection litigation.

43. A class action is superior to individual actions because the monetary value at stake for each Class member is relatively modest, while the systemic nature of BofA's conduct makes collective redress both efficient and necessary.

44. No substantial difficulties are anticipated in the management of this action as a class proceeding.

45. The legal and equitable issues presented are suitable for resolution on a Class-wide basis, and class treatment will ensure uniform outcomes and conserve judicial resources.

## FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

46. Plaintiff incorporates the allegations set forth in paragraphs 1-45 by reference as if fully set forth herein.

47. The nature of BofA's role—as custodian of benefit funds held in special-purpose accounts—imposed fiduciary duties of care, loyalty, and honesty with respect to those funds.

48. These duties arose both by operation of law (given the special deposit status of the accounts) and by contractual agreement (in which BofA promised to comply with California law).

49. BofA violated its fiduciary obligations by appropriating profits generated from custodial funds that it held strictly for the use of benefit recipients.

50. As a result of this breach, Plaintiff and the Class have suffered compensable damages and injury.

51. Therefore, Plaintiff and the Class seek restitution or disgorgement, injunctive relief, and other appropriate relief as prayed for below.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200

52. Plaintiff incorporates the allegations set forth in paragraphs 1-52 by reference as if fully set forth herein.

53. Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at Cal. Bus. & Prof. Code § 17200, *et seq*.

54. The UCL prohibits and provides civil remedies for, unfair competition. Its purpose is to protect both consumer and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

55. By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable and sweeps within its scope acts and practices not specifically proscribed by any other law.

56. The UCL expressly provides for restitution and injunctive relief and also contains provisions denoting its public purpose. A claim for injunctive relief under the UCL is brought by a plaintiff acting in the capacity of a private attorney general. Although the private litigant controls the litigation of an unfair competition claim, the

private litigant is not entitled to recover compensatory damages for his own benefit, but only disgorgement of profits made by the defendant through unfair or deceptive practices in violation of the statutory scheme or restitution to victims of the unfair competition.

57. Defendant committed deceptive and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by converting special deposit funds, violating fiduciary obligations imposed by California, and unjustly enriching itself at Plaintiff and the Class's expense.

58. BofA's actions were also unfair, as they imposed harm on vulnerable consumers for the bank's own financial benefit, contrary to public policy and consumer expectations.

59. Plaintiff and members of the Class acted as reasonable consumers in relying upon the material representation that Defendant was holding their funds in a special deposit for their benefit.

60. The deceptive nature of the conduct—failure to disclose retention of earnings—renders it fraudulent under the UCL.

61. Defendant's unfair business practices are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and members of the Class.

62. Therefore, Plaintiff and the Class seek restitution, disgorgement, injunctive relief and other appropriate relief as prayed for below.

## THIRD CAUSE OF ACTION
## CONVERSION

63. Plaintiff incorporates the allegations set forth in paragraphs 1-62 by reference as if fully set forth herein.

64. Plaintiff and Class members retained ownership of the funds deposited into their BofA EDD card accounts, along with any derivative investment gains generated during the period those funds remained in BofA's custody.

65. BofA knowingly and without legal justification retained the financial returns from these funds for its own benefit, despite having no title to the principal or to any profits derived therefrom.

66. Such conduct constitutes an unlawful conversion of property under California law, as BofA exercised dominion over funds and earnings that belonged to others.

67. Plaintiff and the Class have suffered financial loss as a result of BofA's unauthorized control and use of their property.

68. Therefore, Plaintiff and the Class seek damages, restitution, disgorgement, injunctive relief and other appropriate relief as prayed for below.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT

69. Plaintiff incorporates the allegations set forth in paragraphs 1-69 by reference as if fully set forth herein.

70. Plaintiff, on behalf of herself and the Class, asserts a common law claim for unjust enrichment to the extent that she has no adequate remedy at law.

71. By means of Defendant's wrongful conduct alleged herein, Defendant engaged in financial services to Plaintiff and members of the Class that was unfair, unconscionable, and oppressive.

72. Defendant knowingly received and retained wrongful benefits from Plaintiff and the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

73. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class.

74. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

75. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

76. The financial benefits derived by Defendant rightfully belong to Plaintiff and the Class and must be returned to them.

77. Accordingly, Plaintiff asserts a claim of unjust enrichment under California law.

78. Therefore, Plaintiff and the Class seek restitution, disgorgement, injunctive relief and other appropriate relief as prayed for below.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for herself and the Class as follows:

a) certifying the proposed Class pursuant to Rule 23;

b) declaring that Defendant has committed the violations of law alleged herein;

c) any and all injunctive relief the Court deems appropriate;

d) monetary damages, including, but not limited to, any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

e) providing for any and all equitable monetary relief the Court deems appropriate;

f) punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

g) awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees under Code of Civil Procedure § 1021.5;

h) pre- and post-judgment interest to the extent the law allows; and

i)   such further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: May 14, 2025

**LYNCH CARPENTER, LLP**

By: */s/ Todd D. Carpenter*

Todd D. Carpenter (CA Bar No. 234464)
todd@lcllp.com
(Eddie) Jae K. Kim (CA Bar No. 236805)
ekim@lcllp.com
Tiffine E. Malamphy (CA Bar No. 312239)
tiffine@lcllp.com
9171 Towne Centre Dr, Ste 180
San Diego, CA 92122
Telephone:   (619) 762-1910
Facsimile:   (858) 313-1850

*Attorneys for Plaintiff
and Proposed Class Counsel*