UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKAELA TRAN, on behalf of herself and all other similarly situated<br><br>                                      Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>                                      Defendants. | Case No.:  25-cv-1232-AJB-SBC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**(Doc. No. 12)** |

Plaintiff Mikaela Tran ("Plaintiff") initiated this class action complaint against Defendant Bank of America, N.A. on May 14, 2025. (Doc. No. 1.) On July 1, 2025, BofA filed the instant Motion to Dismiss ("Motion") seeking to dismiss the Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 12.) BofA also filed a request for judicial notice in support of the Motion. (Doc. No. 12-4.) Plaintiff opposed the Motion (Doc. No. 14), and BofA replied (Doc. No. 15). Having considered the parties' arguments and the relevant law, the Court **GRANTS** BofA's Motion to Dismiss.

## I.   BACKGROUND

Bank of America, N.A. ("BofA") is a national banking association with its main corporate offices located in Charlotte, North Carolina. (Doc. No. 1 ¶ 15.) The State of California partnered with BofA to electronically deliver benefit payments such as unemployment insurance, disability insurance, and family leave. (*Id.* ¶ 16.) These benefit payments, issued by the California Employment Development Department ("EDD"), were electronically deposited into individualized debit card accounts. (*Id.* ¶ 2.) BofA established and maintained the individual prepaid card accounts, into which the EDD directly deposited funds. (*Id.* ¶ 17.) These funds were deposited for the purpose of distributing public benefits as part of the State's unemployment and disability program. (*Id.* ¶ 2.)

Plaintiff alleges that by agreeing to administer the prepaid debit card program for the EDD, BofA entered into a special fiduciary relationship with each of the benefits recipients who received their benefits on a prepaid debit card. (*Id.* ¶¶ 46–51.) Plaintiff alleges that the funds the EDD deposited into her account were "special-purpose custodial holdings" (i.e., special deposits), and as such "interest or income earned on [the] funds . . . belongs to the beneficial owner of the funds, not the custodian." (*Id.* ¶¶ 4, 32.) According to the Complaint, BofA "leveraged these custodial accounts to generate significant investment returns—known as 'float income'—during the time it held recipients' funds prior to withdrawal." (*Id.* ¶ 3.)

The debit card accounts were created and controlled by BofA, and BofA operated as the financial intermediary, with control over the timing, method, and structure of account management and fund access. (*Id.* ¶ 23.) To activate and use the cards, recipients were required to accept BofA's standard form Terms and Conditions, which governed the contractual relationship and outlined the cardholder's rights and BofA's obligations. (*Id.* ¶ 24.) That agreement stated that funds in each card account belonged to the individual recipient, not to BofA. (*Id.* ¶ 25.) The agreement also noted that EDD cardholders were not traditional depositors and lacked the rights and privileges associated with BofA's general banking customers. (*Id.* ¶ 26.)

2

25-cv-1232-AJB-SBC

Plaintiff alleges she is one of more than a million California residents that was enrolled in the EDD debit card program. (*Id.* ¶¶ 21, 29.) She enrolled in the EDD public benefit program in or around August 2023 and, pursuant to that enrollment, received a prepaid debit card issued by BofA, which was linked to a designated deposit account administered by BofA. (*Id.* ¶ 29.) Over a span of approximately six months, from September 2023 to February 2024, Plaintiff's benefit payments were electronically transferred into her BofA-issued EDD account. (*Id.* ¶ 30.) The funds deposited into this account were held by BofA for the benefit of Plaintiff and subject to her ownership rights. (*Id.* ¶ 32.)

Plaintiff contends that under California law, such deposits qualify as special-purpose custodial holdings—or "special deposits"—and the bank had no lawful claim to any interest or profits derived from them. (*Id.* ¶¶ 2, 32.) Nevertheless, BofA used the funds while they remained under its control—whether for overnight float, investment purposes, or pooled asset management—to generate undisclosed financial returns. (*Id.* ¶ 33.) BofA did not disclose to Plaintiff that it was retaining the investment proceeds arising from her deposits, nor did it offer her any compensation for the use of her funds, despite having no ownership interest in them. (*Id.* ¶ 34.) Thus, Plaintiff alleges she was deprived of earnings that rightfully belonged to her. (*Id.* ¶ 35.) Plaintiff concedes that she is not seeking "interest" on her special deposit account but is instead seeking BofA's "earnings" it gained based on its use of her funds. (*Id.* ¶¶ 34–35, 49–51, 62, 68, 78; Doc. No. 14 at 10.[1])

By way of this action, Plaintiff seeks to recover those gains, along with injunctive and declaratory relief. (*Id.* ¶ 35.) Plaintiff alleges causes of action for breach of fiduciary duty, violation of the Unfair Competition Law ("UCL"), conversion, and—in the alternative—unjust enrichment. (*See generally* Doc. No. 1.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

## II.      LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 12(b)(1)

Article III, Section 2 of the Constitution limits federal courts to hearing "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016). This limitation means the plaintiff must have standing to sue. *Id.* at 338. To establish standing, a plaintiff must demonstrate the "irreducible constitutional minimum" of: (1) an injury-in-fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation— that the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stage of the litigation.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561).

A motion to dismiss for lack of standing is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010) (noting that "[b]ecause standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss"). Such a motion can be facial or factual in nature. *Pride v. Correa*, 719 F.3d 1130, 1139 (9th Cir. 2013). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

25-cv-1232-AJB-SBC

"[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In resolving such an attack, unlike a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler*, 598 F.3d at 1122. However, in the absence of a full-fledged evidentiary hearing, disputes in the facts pertinent to subject matter jurisdiction are viewed in the light most favorable to the opposing party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). The disputed facts related to subject matter jurisdiction should be treated in the same way as one would adjudicate a motion for summary judgment. *Id.*

### B.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); s*ee Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of

factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Thus, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.    JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

As part of its motion to dismiss, BofA requests the Court take judicial notice of the California Employment Development Department Prepaid Debit Card Account Agreement (the "Agreement") entered into by those who elected to receive benefits from the EDD through the BofA debit card program. (Doc. Nos. 12-3 (the Agreement); 12-4 (request for judicial notice); 12-5 (memorandum of points and authorities in support of request).) Plaintiff does not oppose the request for judicial notice. (*See generally* Doc. No. 14.)

Under Rule 201 of the Federal Rules of Evidence, a court can take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1161 (S.D. Cal. 2020) ("[N]umerous cases have denied judicial notice of a party's documents because they are not a source whose accuracy cannot reasonably be questioned.") (collecting cases refusing to take judicial notice of Terms of Service and other party documents).

BofA asserts that "good cause" exists to judicially notice the Agreement. (Doc. No. 12-5 at 3.) Specifically, BofA argues (1) that the Agreement "is referred to in detail in the Complaint" and actually "forms the purported basis for Plaintiff's causes of action," such that it is incorporated by reference, and (2) that Plaintiff cannot credibly dispute the authenticity of this document[.]" (*Id.* (citing *United States v. Ritchie*, 342 F. 3d 903, 908

6

(9th Cir. 2003); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F. 3d 988, 1002 (9th Cir. 2018); *Steinle v. City of S.F.*, 919 F.3d 1154, 1162–63 (9th Cir. 2019)).)

First, good cause is not the appropriate standard for judicial notice as the rule is articulated in Federal Rule of Evidence 201. Second, incorporation by reference is a distinct doctrine from judicial notice. *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1061 (C.D. Cal. 2012) ("Although often conflated, the doctrine of incorporation by reference is distinct from judicial notice."); *see also Khoja*, 899 F.3d at 998 ("Both of these procedures permit district courts to consider materials outside a complaint, but each does so for different reasons and in different ways."). Third, BofA's contention that the Agreement meets the required elements of the doctrine of incorporation by reference does not satisfy the requirements for judicial notice outlined in Rule 201. *See Khoja*, 899 F. 3d at 998; *Steinle*, 919 F.3d at 1162–63. Because BofA does not offer a factual basis to find that the Agreement is either generally known within the trial court's territorial jurisdiction or that it can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned, the Court **DENIES** BofA's request for judicial notice.

Considering the substance of BofA's arguments, the Court turns to whether consideration of the Agreement would be proper pursuant to the doctrine of incorporation by reference. Incorporation by reference is a "judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. This doctrine allows the court to incorporate documents and other instruments into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

Here, the Complaint references "BofA's debit cardholder agreements" and forms the basis of the Plaintiffs' claims by referencing the agreement. (Doc. No. 1 ¶¶ 5, 25, 26, 48.) The Agreement is essential to Plaintiff's claim because Plaintiff acknowledges a contractual relationship with BofA, using the terms and conditions of Agreement to explain the nature of the bank-consumer relationship and the duty within, and Plaintiff does not offer a different agreement that she may be referring to instead. (*Id.* ¶ 48.) Although

25-cv-1232-AJB-SBC

Plaintiff does not attach the Agreement to the Complaint, it was brought into the record as an attachment to the instant Motion to Dismiss. (Doc. No. 12-3.) Plaintiff neither opposes BofA's argument that incorporation by reference is proper, nor challenges the accuracy of the exhibit. (*See* Doc. No. 14.) In fact, Plaintiff cites the Agreement in her opposition. (*Id.* at 11.) Thus, the Court finds the Agreement is incorporated by reference.

## IV.     DISCUSSION

### A.     Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

BofA moves to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1) arguing Plaintiff lacks standing to assert any of her claims. (Doc. No. 12-1 at 14.) BofA argues that Plaintiff lacks standing for two reasons. (*Id.* at 14–17.) First, if Plaintiff's debit card funds were special deposits, as Plaintiff alleges, then the EDD is the depositor. (*Id.*) Thus, any contract or agreement was between BofA and the EDD. (*Id.*) Plaintiff, as a third-party, would lack standing to sue to enforce the agreement. (*Id.*) Second, BofA argues that Plaintiff has not suffered a concrete injury because under California law, an accountholder is not entitled to interest earnings on funds held as "special deposits." (*Id.* at 14.)

Because BofA makes only a facial attack on standing in connection with its motion to dismiss, the Court only considers whether, assuming the truth of the allegations in the Complaint, Plaintiff has Article III standing. To establish Article III standing, a plaintiff must show: (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of (i.e., traceability), and (3) a likelihood that the injury will be redressed by a favorable decision (i.e., redressability). *Lujan*, 504 U.S. at 560. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000). This is true "whether it be injunctive relief, damages or civil penalties." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007). In the absence of standing, there is no subject matter jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546–47 (1986) (citing *Mansfield C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

"The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (internal citations omitted). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"[I]njury in fact, [is] the first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338–39 (internal quotation and citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). While particularization is necessary to establish injury in fact, it alone is not sufficient. *Id.* An injury must also be "concrete." *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.*

Here, Plaintiff has not alleged a concrete injury. Plaintiff's asserted injury is the loss of "float" or investment earnings allegedly generated while BofA held her funds. But the Complaint does not allege that Plaintiff was ever entitled to those earnings, that she was denied access to any portion of her benefits, or that BofA's conduct caused her to receive less money than she otherwise would have received. At most, Plaintiff alleges that BofA earned money for itself while administering the account. That allegation describes a benefit BofA received, not a concrete, particularized injury to Plaintiff. Absent a legally cognizable entitlement to the alleged earnings, the claimed deprivation is speculative and insufficient to establish injury in fact for Article III standing.

9

25-cv-1232-AJB-SBC

In her opposition, Plaintiff relies on *Pottorff v. Key*, 67 F.2d 833 (5th Cir. 1933) and *Merrill Lynch Mortg. Cap., Inc. v. F.D.I.C.*, 293 F. Supp. 2d 98 (D.D.C. 2003) to support her standing argument. (*See* Doc. No. 14 at 10.) Plaintiff's reliance is misplaced.

*Pottorff* and *Merrill Lynch* start from the premise that a special deposit already exists and then asks the merits question—if a bank wrongfully uses trust funds, do the proceeds belong to the trust? That goes to ownership and tracing, not to whether a particular plaintiff has suffered a concrete injury sufficient to invoke federal jurisdiction. Article III standing is antecedent to, and analytically distinct from, whether a defendant violated fiduciary duties or owes disgorgement. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("Article III jurisdiction is always an antecedent question . . . ."); *see also One Fair Wage, Inc. v. Darden Restaurants Inc.*, No. 21-16691, 2023 WL 2445690, at *3 (9th Cir. Mar. 10, 2023) (holding that "the district court was obligated to resolve first whether [Plaintiff] had Article III standing"). A plaintiff cannot bootstrap standing by pointing to cases that merely describe what happens if a trust breach is proven.

Moreover, the Complaint alleges that the EDD deposited the subject funds. Both *Pottorff* and *Merrill Lynch* make clear that any proceeds are "claimable as the proceeds of the trust res." *Pottorff*, 67 F.2d at 834. Under the special-deposit doctrine, the depositor/beneficial owner is the one with the claim to the res and its proceeds. *See Merrill Lynch*, 293 F. Supp. 2d at 103 ("[Special] deposits are like bailments in which the bank becomes a bailee and the depositor retains title to the things or money deposited. Special deposits are not the property of a bank. If a bank fails, special deposits do not become part of the receivership estate, and therefore special depositors are entitled to be paid in full before other creditors of the bank.").

Even if Plaintiff adequately alleges that she is the trust beneficiary, which she does not, she still fails to allege a concrete, personal loss. Neither of Plaintiff's cited cases suggest that a beneficiary suffers an injury in fact merely because a bank earned money while holding funds. The injury arises only if the plaintiff was entitled to receive something and did not. Here, Plaintiff does not allege that she was promised interest, that the account

10

bore interest, that she was denied access to any deposited funds, or that any identifiable proceeds were owed to her and withheld. At most, she alleges that the bank profited. That is insufficient under Article III, which requires a personal deprivation, not a generalized grievance about a defendant's enrichment.

Finally, *Pottorff* predates contemporary standing doctrine by decades, and *Merrill Lynch* addressed FDIC receivership and trust principles—not constitutional standing. Neither holds that a plaintiff has standing absent a concrete deprivation of her own property or legally protected interest. Accordingly, for the reasons stated, Plaintiff has not met her burden in showing that she has suffered an injury-in-fact, thus, she lacks standing to bring this action. *See Loritz v. U.S. Court of Appeals for the Ninth Circuit*, 382 F.3d 990, 992 (9th Cir. 2004) ("[A] plaintiff filing an action in federal court has the burden of alleging specific facts sufficient to satisfy the standing elements."). BofA's Motion to Dismiss under Rule 12(b)(1) is **GRANTED**.

## B.    Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Because Plaintiff does not have standing to pursue her claims, this Court lacks subject matter jurisdiction to hear the case. Accordingly, the Court is without jurisdiction to consider BofA's 12(b)(6) motion. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter is inflexible and without exception, for jurisdiction is power to declare the law, and without jurisdiction the court cannot proceed at all in any cause.") (cleaned up).

## C.    Leave to Amend

Based on the facts alleged in the Complaint, it appears unlikely that Plaintiff could allege a concrete injury through amendment. However, because the Ninth Circuit has a liberal policy favoring amendments, Plaintiff is given the opportunity to amend her Complaint to cure the deficiencies outlined in this order. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

## V.   CONCLUSION

For the foregoing reasons, BofA's Motion to Dismiss is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITH LEAVE TO AMEND**. Should Plaintiff choose to do so, she may file an amended complaint by no later than **March 12, 2026**. BofA's responsive pleading must be filed by **April 30, 2026**.

**IT IS SO ORDERED.**

Dated:  February 27, 2026

Hon. Anthony J. Battaglia
United States District Judge

12

25-cv-1232-AJB-SBC